**Exhibit 18**

> ARTICLE 1 Client-Lawyer Relationship
>
>    16-115. Safekeeping property.
>       ANNOTATIONS

## 16-115. Safekeeping property.

   A.  **Holding another's property separately.** A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five (5) years after termination of the representation.

   B.  **Client trust account deposits; discretionary.** A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for that purpose.

   C.  **Client trust account deposits; mandatory.** A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

   D.  **Notification of receipt of funds or property.** Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

   E.  **Severance of interest.** When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

[As amended, effective February 15, 1988; and effective January 1, 1990; March 4, 1999; July 31, 2000; April 1, 2002; as amended by Supreme Court Order No. 08-8300-025, effective January 1, 2009.]

**Committee commentary.** —

[1]      For recordkeeping requirements related to trust accounts, *see* Rule 17-204 NMRA. For specific requirements related to mandatory IOLTA accounts, *see* Rule 24-109 NMRA. A lawyer should hold property of others with the care required of a professional fiduciary. Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances. All property that is the property of clients or third persons, including prospective clients, must be kept separate from the lawyer's business and personal property and, if monies, in one or more trust accounts. Separate trust accounts may be warranted when administering estate monies or acting in

similar fiduciary capacities. A lawyer should maintain on a current basis books and records in accordance with generally accepted accounting practice and comply with any recordkeeping rules established by law or court order. *See, e.g.*, Rule 17-204 NMRA of the Rules Governing Discipline and ABA Model Financial Recordkeeping Rule.

[2]     While normally it is impermissible to commingle the lawyer's own funds with client funds, Paragraph B provides that it is permissible when necessary to pay bank service charges on that account. Accurate records must be kept regarding which part of the funds belongs to the lawyer.

[3]     Lawyers often receive funds from which the lawyer's fee will be paid. The lawyer is not required to remit to the client funds that the lawyer reasonably believes represent fees owed. However, a lawyer may not hold funds to coerce a client into accepting the lawyer's contention. The disputed portion of the funds must be kept in a trust account and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly distributed.

[4]     Paragraph E also recognizes that third parties may have lawful claims against specific funds or other property in a lawyer's custody, such as a client's creditor who has a lien on funds recovered in a personal injury action. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client. In such cases, when the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved. A lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, but, when there are substantial grounds for dispute as to the person entitled to the funds, the lawyer may file an action to have a court resolve the dispute.

[5]     The obligations of a lawyer under this rule are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves only as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction and is not governed by this rule.

[6]     A lawyers' fund for client protection provides a means through the collective efforts of the bar to reimburse persons who have lost money or property as a result of dishonest conduct of a lawyer. Where such a fund has been established, a lawyer must participate where it is mandatory, and, even when it is voluntary, the lawyer should participate.

[Adopted by Supreme Court Order No. 08-8300-025, effective January 1, 2009.]

**ANNOTATIONS**

**The 2008 amendment,** approved by Supreme Court Order No. 08-8300-025, effective January 1, 2009, in Paragraph A, deleted the former provision that records be kept in a manner that conforms to Rule 17-204 NMRA and the provision that records be kept for five years after termination of representation "of the client in the matter" or the termination of the fiduciary or trust relationship; added new Paragraphs B and C; relettered former Paragraph B as Paragraph D; relettered former Paragraph C as Paragraph E; in Paragraph E, changed "both the lawyer and another person" to "two or more persons (one of whom may be the lawyer)"; deleted the requirement that property be kept separate until there is an accounting and severance of interests; deleted the sentence which required a lawyer to keep separate any property that is the subject of a dispute until the dispute is settled and added the last sentence; and deleted former Paragraph D which provided for pooled interest-bearing trust accounts, former Paragraph E which provided for separate interest-bearing trust accounts, and

former Paragraph F which provided for the determination of whether a client's funds are nominal amounts.

**The 2002 amendment,** effective April 1, 2002, in Paragraph D, inserted the exception at the beginning and added the last sentence; in Paragraph D(1), substituted "interest income from an IOLTA" for "earning from such an"; added Paragraphs D(7) and D(8) and inserted references to "IOLTA" in Paragraphs D(2) through D(5).

**The 2000 amendment,** effective July 31, 2000, inserted "which shall hold such funds as trustee for the benefit of the programs set forth below" at the end of Paragraph D(5)(a).

**The 1999 amendment,** effective March 4, 1999, substituted "Center for Civic Values ('center')" for "New Mexico State Bar Foundation ('foundation')" in Paragraph D(5)(a) and made related substitutions throughout Paragraph D.

**Compiler's notes.** — The old ABA Comment was replaced by the 2008 committee commentary.

**Misappropriation misuse of funds distinguished.** — Both misappropriation and conversion of funds require intentional wrongdoing. Misuse of client funds occurs when a lawyer withdraws client funds for an improper purpose, but does so in error, without intent to deprive the client of the funds. *In re Yalkut*, 2008-NMSC-009, 143 N.M. 387, 176 P.3d 1119.

**Misuse of funds.** — Claim that a flat fee or retainer was charged that is nonrefundable will not suffice to justify a failure to deposit unearned client funds in a trust account, a withdrawal of client funds from a trust account to pay fees that have not yet been earned, or a failure to promptly return unearned funds to a client upon termination of the representation. *In re Dawson*, 2000-NMSC-024, 129 N.M. 369, 8 P.3d 856.

**Claiming entitlement to third-party property.** — Where respondent received a $100,000 check from his client's parents to post client's bond, and where respondent was never authorized to use the money for any purpose other than to post client's bond, and where, after client's charges were dismissed, respondent failed to return the parents' $100,000 check, but only refunded $11,000, claiming additional fees owed to him of $89,000, respondent wrongfully exercised dominion and control of third-party funds by placing the bond money directly into his personal account instead of a trust account and wrongfully detained the funds after demand was made when he refused to return all of the parents' bond money. *In re Venie*, 2017-NMSC-018.

**Personal use of client's funds.** — Attorney was subject to an indefinite period of suspension (of not less than five years) since he had used a client's funds as collateral for a personal loan and had invested client's funds in a corporation in which he had an ownership interest, even though he made full restitution and fully acknowledged his misconduct. *In re Thompson*, 1987-NMSC-005, 105 N.M. 257, 731 P.2d 953.

Since attorney failed to pay complainant-physician certain funds reportedly withheld by attorney for physician from the settlement funds of three of attorney's clients, who were also physician's patients, and attorney later informed physician that he had spent the clients' funds but would be able to pay physician as soon as he received money in another settlement, and never paid physician, attorney violated this rule in that he failed to hold his clients' funds separately from his own and failed to appropriately safeguard such funds; failed to promptly notify a third person, the physician, of his receipt of the funds in which physician had an interest, and he failed to promptly deliver the funds physician was entitled to receive; and failed to keep the funds belonging to another separately, when both he and another person claimed an interest in those funds, until there was a proper resolution or

severance of those interests. *In re C'De Baca*, 1989-NMSC-070, 109 N.M. 151, 782 P.2d 1348.

Disbarment was the appropriate sanction since defendant commingled his own money with a trust account, issued checks to clients for whom no money was on deposit, issued checks against insufficient funds and transferred money from the trust account to his own accounts. *In re Rawson*, 1992-NMSC-036, 113 N.M. 758, 833 P.2d 235.

**Removal of escrowed funds to own use** constituted conversion of clients' funds in violation of this rule. *In re Arrieta*, 1987-NMSC-016, 105 N.M. 418, 733 P.2d 866.

**Attorney was guilty of misuse of trust funds** when, for a short period of time, he withdrew client funds amounting to more than he had earned as of that date; and a two-year deferred suspension, with supervised probation, was the appropriate sanction. *In re Cannain*, 1997-NMSC-001, 122 N.M. 710, 930 P.2d 1162.

**Attorney who stole approximately $62,500 from various clients** by forging his clients' names on settlement checks and withdrawal slips on accounts maintained by clients was disbarred. *In re Wilson*, 1989-NMSC-021, 108 N.M. 378, 772 P.2d 1301.

**Fraud, deceit or misrepresentation and improperly withholding funds due client** violated former Canon 9, regarding avoiding even the appearance of professional impropriety. *In re Runyan*, 1976-NMSC-009, 89 N.M. 172, 548 P.2d 452.

**Suspension from practice for gross mishandling of trust funds.** — This rule and Rule 17-204 NMRA set forth in detail exactly what an attorney must do to be in compliance with the requirements for maintaining attorney trust accounts. An attorney who produced ledger sheets which did not contain the information required to be recorded and who refused to cooperate with disciplinary counsel in violation of Rule 16-803 NMRA was subject to suspension. An attorney's failure to properly maintain an attorney trust account will be viewed as a transgression of the most serious nature. *In re Ruybalid*, 1994-NMSC-117, 118 N.M. 587, 884 P.2d 478; *In re Martin*, 1999-NMSC-022, 127 N.M. 321, 980 P.2d 646; *In re Privette*, 1978-NMSC-034, 92 N.M. 32, 582 P.2d 804.

**Failure to maintain trust account.** — Failure of an attorney to properly maintain his trust account records constituted a violation of this rule and Rule 16-804H NMRA and, coupled with other violations, such failure warranted disbarment. *In re Greenfield*, 1996-NMSC-015, 121 N.M. 633, 916 P.2d 833.

**Commingling of client's funds with attorney's funds.** — Where attorney and client entered into two fee agreements, the first of which required client to pay a $7,500 retainer to secure payment of fees, and the second of which required client to pay a flat fee of $25,000 that would cover all work to be performed from the date of the agreement forward, and where attorney failed to account for these payments in her trust account ledger, but deposited the checks directly into her law firm's operating account, and where attorney, absent any invoices to reflect work performed for client, transferred from her trust account to her operating account over $20,000 of funds held on behalf of client, attorney violated the provisions of this section, because any retainer or flat fee not yet earned is client money that must be safely kept and held in trust for the client, separately from the lawyer's own property.  *In re Behles*, 2019-NMSC-016.

**Funds received for liquor license.** — Attorney's conversion to his own use of money received from a client to have a liquor license transferred to her name violated Rules 1-102, 6-101, 7-101 and 9-102 NMRA of the Code of Professional Responsibility (now Rules 16-102, 16-104, 16-115 and 16-804 NMRA of the Rules of Professional Conduct). *In re Gallegos*, 1986-NMSC-058, 104 N.M. 496, 723 P.2d 967.

**Misappropriation of funds warranted disbarment.** — Attorney's misappropriation of client funds and failure to cooperate with disciplinary counsel warranted disbarment. *In re Krob*, 1997-NMSC-037, 123 N.M. 652, 944 P.2d 881.

Attorney was disbarred where he misappropriated client funds by means of an elaborate scheme involving the opening of a trust account in his own name without informing his firm or reporting the account to the disciplinary board. *In re Reynolds*, 2002-NMSC-002, 131 N.M. 471, 39 P.3d 136.

**Assistant cashing check without documentation.** — To allow one's assistant to simply cash a check made payable to a client with no documentation of the transaction is a violation of this rule. *In re Martinez*, 1988-NMSC-033, 107 N.M. 171, 754 P.2d 842 (1988).

**Attorney suspended indefinitely for failing to preserve identity of client's funds.** *In re Harrison*, 1985-NMSC-110, 103 N.M. 537, 710 P.2d 731.

**Nonmonetary fee must be safeguarded and returned when the client is so entitled.** — Where attorney accepted a flat fee from a client in the form of real property, the attorney violated Rule 16-115(A) and (D) NMRA in transferring a portion of that nonmonetary fee to a third party before he had earned it so that he was unable to refund the unearned portion when requested, because a fee, nonmonetary or otherwise, must be identified as belonging to the client, safeguarded, and promptly returned when the client is so entitled. *In re Montclare*, 2016-NMSC-023.

**Six-month suspension** and other penalties warranted since attorney accepted one-half of fee and failed to represent the client, allowing default to be entered against the client. *In re Trujillo*, 1990-NMSC-062, 110 N.M. 180, 793 P.2d 862.

**One-year suspension warranted.** — Actions of an attorney involving false statements of material fact to a bankruptcy court, representation of a client in bankruptcy when owed money by the client, deposit of monies in his operating account instead of his trust account, failure to produce required records for his trust account, and misrepresentations to the Internal Revenue Service when acting in his capacity as a CPA, warranted suspension. *In re Archuleta*, 1996-NMSC-039, 122 N.M. 52, 920 P.2d 517.

Attorney's actions warranted a one-year suspension since he made misrepresentations to a court, failed to return unearned fees, failed to render an accounting to a client and acted otherwise to prejudice the administration of justice. *In re Arrieta*, 1986-NMSC-045, 104 N.M. 389, 722 P.2d 640.

**Probated suspension from practice of law warranted.** *In re Gabriel*, 1990-NMSC-091, 110 N.M. 691, 799 P.2d 127; *In re Moore*, 2000-NMSC-019, 129 N.M. 217, 4 P.3d 664.

**Disbarment was warranted,** despite mitigating factors, since the attorney converted client funds; engaged in conduct involving deceit, dishonesty and misrepresentation; failed to hold clients' funds separate from his own; failed to notify clients of the receipt of funds belonging to them; failed to maintain required trust account records; failed to protect clients' interests at the termination of the representation; failed to advise clients of the status of their legal matters; engaged in conduct prejudicial to the administration of justice; and engaged in conduct adversely affecting his fitness to

practice law. *In re Kelly*, 1995-NMSC-038, 119 N.M. 807, 896 P.2d 487.

Disbarment was justified because of the inadequacy of an attorney's representation of clients in violation of Rules 16-101, 16-102(A), 16-103 and 16-104(A) NMRA, by his business transaction and trust account violations of this rule and Rules 16-108 and 16-116(D) NMRA, and violations of Rule 16-801 NMRA and other rules relating to disciplinary proceedings. *In re Darnell*, 1997-NMSC-025, 123 N.M. 323, 940 P.2d 171.

Disbarment of an attorney for 20 months, with automatic reinstatement on a probationary basis, was warranted based on the necessary intervention in his law practice because he was abusing crack cocaine and on his admission that during his drug addiction he had misappropriated money from his attorney trust account in violation of Paragraph A of this rule, by failing to safeguard a client's property, and Paragraphs C and H of Rule 16-804 NMRA, by engaging in conduct involving dishonesty, and conduct adversely reflecting upon one's fitness to practice law. *In re Zamora*, 2001-NMSC-011, 130 N.M. 161, 21 P.3d 30.

**Disbarment is appropriate sanction for attorney's conversion of his clients' funds to his own use.** *In re Duffy*, 1985-NMSC-034, 102 N.M. 524, 697 P.2d 943.

**Restitution generally irrelevant in determining punishment.** — Generally, when an attorney engages in intentional conduct involving dishonesty, he or she is disbarred. This is true even where restitution has been made to persons injured by the lawyer's misconduct. *In re Hartley*, 1988-NMSC-056, 107 N.M. 376, 758 P.2d 790.

**Indefinite suspension warranted.** *In re Chavez*, 1996-NMSC-059, 122 N.M. 504, 927 P.2d 1042.

**Two-year suspension warranted.** *In re Reid*, 1996-NMSC-060, 122 N.M. 517, 927 P.2d 1055.

**Actions deemed violations of this rule.** *In re Hamar*, 1997-NMSC-048, 123 N.M. 795, 945 P.2d 1013; *In re Chavez*, 2000-NMSC-015, 129 N.M. 035, 1 P.3d 417.

**Am. Jur. 2d, A.L.R. and C.J.S. references.** — Attorney's assertion of retaining lien as violation of ethical code or rules governing professional conduct, 69 A.L.R.4th 974.