# Exhibit 21

# Trust Account Manual

**I.  Basic Rules**

When attorneys are entrusted with money or property from, on behalf of, or for clients they must preserve the integrity and safety of it.

<u>What are funds from a client</u>?

- Money received from a client for filing fees or service of process

- Money paid <u>in advance</u> by a client to cover costs of litigation

- Money received from client for distribution to a third party to whom the client is indebted (such as money for alimony, payment of taxes, adverse judgments, or other legal obligations)

-  Money received from client for distribution to a third-party beneficiary (such as for child support or the establishment of a trust)

- Money received from a client for safekeeping pending the consummation of a business or investment transaction the client is contemplating and with which the attorney is providing legal assistance

- Money received from a client for safekeeping for possible distribution to a third party (such as funds to have available to settle any claims against the client which the attorney may be negotiating)

- Money received <u>in advance</u> as a retainer which may be applied toward that attorney's fee on an hourly basis as it is earned but which does not belong to the attorney until it is actually earned

- Money paid as a "flat fee" which may be claimed by the attorney only when earned and for which all unearned portions

1

must be safe-guarded in the event the attorney is discharged by the client or is otherwise unable to complete the representation

What are funds received on behalf of a client?

- Money received from a third party on behalf of a client to be used for any of the purposes enumerated above

What are funds received for a client?

- Money received from a third party in settlement of a client's claims or in payment of a judgment awarded to the client

- Money collected from a third party and owed to the client (such as alimony payments, child support payments, rent payments, trust disbursements, or payments on debts to the client)

The above list is not all-inclusive; other monies may fall into one or another of the listed categories.

There are **two sources** for directives regarding how the money is to be maintained, accounted for, and distributed. <u>The first is Rule 16-115 of the Rules of Professional Conduct</u>. This safekeeping of property rule has seven basic requirements for receipt and maintenance of he funds

- The funds in an attorney's possession must be held separately from the attorney's own funds. The only other money in the client account would be money necessary to maintain the account (such as a required minimum balance or money to cover check printing and other bank charges) and funds belonging in part to the client and in part to the attorney (such as a settlement check made payable to both the client and the attorney)

- The funds must be maintained in the state where the attorney's office is located, unless the client consents to other arrangements. For example, when an attorney is holding a large amount of money for a particular client, the client may agree to have the funds placed in a separate interest-bearing account in

another jurisdiction, particularly when the client may be located in another jurisdiction and have a relationship with a financial institution in that jurisdiction.

- Client funds must be specifically identified as such and safeguarded. (NOTE: The account must be clearly identified as "Attorney Trust Account" or "IOLTA Account". This requirement will be discussed below.)

- Complete records regarding the funds must be maintained and preserved for a period of five (5) years after the termination of the representation. (This will be discussed below.)

- Upon the receipt of any client funds, the attorney must promptly notify the client or third party of the receipt of the funds and promptly deliver said funds to the party entitled to receive them. (NOTE: this would mean that any third party – such as a medical provider or subrogation claimant - would be entitled to notice of the attorney's receipt of the funds.)

- Upon request of the client or third person, the attorney must render a full accounting of the funds received and disbursed.

- When two or more parties (one of whom may be the attorney) claim an interest in the same property – such as when there is a fee dispute or a disagreement regarding the amount owed to a medical provider or heir – the disputed property shall be kept separately (i.e., in the trust account) by the attorney until the dispute is resolved.

The second set of guidelines for handling client funds is found in <u>Rule 17-204 of the Rules Governing Discipline</u> and is essentially a detailed list of records you are required to maintain regarding your law practice. The records required to be maintained by this Rule and by Rule 16-115 must be readily accessible to the lawyer and available for production to the Disciplinary Board *and* the Client Protection Fund in a timely manner upon request or demand by either entity whether by letter or subpoena. Failure to produce the records within 10 days of a request may lead to an administrative suspension. These records include:

- A record of all deposits into and withdrawal from each trust account identifying the date, source, and description of each item deposited as well as the date, payee, and purpose of each disbursement. Deposit slips shall separately identify each item deposited. Disbursements shall be made only by authorized bank transfer or check payable to a named payee but <u>not</u> to "cash." An attorney licensed in this state must be a signatory on the account and that attorney shall be responsible for either making or overseeing monthly reconciliations of the checkbook balance or general ledger, the bank statement balance, and the client trust ledger balances, and the responsibility to answer questions, including from the Disciplinary Board, regarding the client trust account. (Note: **No non-lawyers** may be a signatory on the trust account). The designation of one or more attorneys as the person or persons responsible to make or oversee monthly reconciliations, maintain records and answer questions pertaining to trust accounts does not relieve any other attorney from his responsibility;

- A separate ledger for each separate trust client maintaining a continuing balance for the client. The total of balances of all individual client ledgers must equal the beginning balance of all individual ledgers plus the total of all additional amounts deposited minus the total of all monies disbursed.

- Copies of all retainer and compensation agreements with clients

- Copies of all statements to clients reflecting all transactions on the individual account for the period covered by the statement

- All checkbooks, check stubs, bank statements, copies of cancelled checks and duplicate deposit slips relating to each trust account

- Copies of invoices and statements received from others and paid out of trust funds

- Written reconciliations made **at least monthly** of the checkbook balance, the bank statement balance, and the individual client ledger sheet balances

- Copies of those portions of each client's case file reasonably necessary for a complete understanding of the financial transactions pertaining thereto

- Proof of compliance with Rule 24-109 of the Rules Governing the New Mexico Bar relating to IOLTA (Interest on Lawyer Trust Accounts) and copies of statements received from the financial institution in compliance with Paragraph (B)(4)(c) of that Rule

For property other than cash, a separate ledger should be maintained for each client identifying

- The date received

- The person from whom the property was received

- A description of the property (including make, model, serial number, and/or other identifying characteristics)

- Its location in the attorney's office or other location, and

- The date released by the attorney and to whom

Trust Account Plan:

- A written trust account plan for all client trust accounts that includes at a minimum: (a) the name(s) of the lawyer(s) and any other persons who has or have authority to sign client trust account checks; (b) the name(s) of the lawyers who is or are responsible for monthly reconciliations of the law firm's trust account(s); (c) the name(s) of the lawyer(s) who is or are responsible for answering any questions, including those from the Disciplinary Board, regarding the client trust account(s) ;

5

and the names of all persons who will be responsible for maintaining the records of and continuing the maintenance of the client trust account(s) in the event the law firm dissolves, is sold, or otherwise ceases to exist or provide legal services. The existence of the written trust account plan, including the designation of a person responsible for monthly reconciliations of the law firm's trust account(s), the maintenance of records of the account(s) and the responsibility for answering questions pertaining to the accounts does **NOT** relieve any lawyer from compliance with the terms of this or other rules.

## II. Commingling

An attorney who receives funds from or for a client must keep those funds in a trust account until distribution. A trust account is a fiduciary account, hence funds held in trust on behalf of clients must be kept separate and apart from funds belonging to the attorney or the law firm. Combining these funds is called commingling and is prohibited by Rule 16-115.

Rule 16-115(c) requires an attorney to deposit in the trust account all unearned legal fees and expenses that are paid in advance. Once the attorney has earned and portion of the fee, however, it must be transferred to the attorney's personal or business account by way of check or wire transfer to the other account prior to being used by the attorney for any purpose. Far too often attorneys skip this step and issue checks out of the trust account directly to the attorney's creditors or others to whom the attorney owes money on the theory that since the fee has now been earned, this is appropriate. IT IS NOT, and trust checks written to the landlord or to cash or to the utility company would constitute evidence of – at the very least – commingling (or, in worse cases, misappropriation.)

Leaving earned fees in trust is not only unethical but also can give rise to allegations of fraud. The Internal Revenue Service could deem earned fees that are left in the attorney's trust account to be an attempt by an attorney to avoid or defer the payment of income taxes. Similarly, if the attorney represents to a client's creditors that the money in trust does not belong to the client but are fees that have been earned by the attorney and subsequently called upon to explain to disciplinary counsel why the

6

"earned" funds are still in the trust account, he or she will be faced with a bit of a dilemma.

Some attorneys keep a cushion in their accounts to avoid overdrafts. **THIS IS IMPROPER**. While a nominal amount sufficient to cover known, anticipated and specifically enumerated incidental bank expenses (such as check printing costs of which the bank has notified the attorney) is acceptable, any amount over that would be considered commingling. For example, if the bank notifies the attorney that the costs of printing new checks for the account will be $7.25, the attorney may deposit $7.25 but no more to cover this known, anticipated and specifically enumerated incidental bank expense. Additionally, attorneys and their bookkeepers should be meticulous in their record keeping and calculating so that mathematical errors resulting in insufficient funds do not occur. Therefore, there should never be a circumstance in which an attorney must rely on a cushion of personal funds in the trust account.

### III. Recordkeeping

The recordkeeping rule (*see* Section I) sets out clearly the minimum required financial records that must be prepared and maintained. Since bookkeeping and banking duties are frequently delegated to paralegals or other non-lawyers in the office, however, and because various members of the legal team may create or process financial records, everyone must be familiar with the recordkeeping requirements. An attorney is obligated to educate the staff about these requirements pursuant to Rules 16-501 and 16-503 of the Rules of Professional Conduct.

There are three major reasons that this is important. First, if there is ever a question regarding the integrity of client funds or financial mismanagement, disciplinary authorities may request copies of the financial records. If an attorney is unable to produce such records, he or she may be subject to sanction under Rule 17-204 even if no defalcation or mismanagement is found. Second, the only way for one to detect any misappropriation of trust or law firm funds is through diligent and comprehensive recordkeeping and financial review. Finally, occasionally a bank will make an error by posting a deposit to the wrong account; this may result in an overdraft on the trust account and prompt an inquiry from the Office of Disciplinary Counsel. Complete records on the account can prove

that there was no misconduct by the attorney and will ordinarily result in the bank's admission of an error.

From the requirement in Rule 17-204 that copies of monthly reconciliations of the checkbook balance, the bank statement balance, and the client ledger sheet balances be kept, one can infer that one must reconcile those accounts at least 12 times per year. Most banks will provide a form with each monthly statement that one can utilize to balance the account by hand. Bookkeeping software can also do this, so long as someone enters the data when the monthly statement arrives.

Records must specifically identify "the date, source, and description" of each deposit "the date, payee, and purpose" of each disbursement. Lawyers will sometimes produce carbon deposit slip books in response to financial mismanagement allegations, and these do not always contain the required information; the source of cash, money orders, cashier's checks and even regular checks is often omitted from the carbon copy. Many times the lawyer does not include a client reference or the client is not sufficiently identified (for example, "Smith" but no other initial.) One can deposit more than one check or multiple cash receipts with the same deposit slip, but in this case one must list each item singly with a full name and case number for identification purposes. Records of deposit also encompass deposit receipts, which should be attached to the carbon of the deposit slip with a copy attached to each client ledger affected by the deposit.

When making a deposit of client funds, the funds must be deposited intact. If a client's check includes an advance payment of costs and a partial payment of fees, the deposit should not be split by placing the fee portion in the operating account and the costs portion in the trust account. The entire amount should be deposited in trust and then a check issued to the operating account for any earned fees.

Another requirement of Rule 17-204 is that disbursements must be made" only by authorized bank transfer or by check payable to a named payee <u>and not to cash.</u>" (Emphasis added.) It would follow from this that a lawyer also may not withdraw cash at the counter or at an ATM. If a client does not have an account or other means to negotiate a check, the lawyer should assist the client in getting the trust account check cashed at the lawyer's bank.

8

With the advent of internet banking, opportunities to run afoul of this requirement abound. While it might be more convenient to transfer earned fees from the trust account to the operating account electronically, it is risky. If done this way, meticulous records should be kept and all information that would be maintained in the event of a written check entered and preserved.

## IV. Misappropriation

It should be obvious that a lawyer must never convert client funds to his or her own use. Unfortunately, there have been numerous occasions in the past where New Mexico attorneys have either forgotten or ignored this basic rule. Misappropriation can also subject an attorney to both criminal and civil liability. Further, there have been occasions when a non-lawyer staff member to whom the task of handling funds was delegated has misappropriated client funds. Consequently, all attorneys, whether a solo practitioner, a partner or an associate, needs to be conscious of the financial situations in their law offices. Lawyers should carefully check the background of each potential employee and give diligent attention to the processing of client and firm funds and to financial recordkeeping. Stated alternatively, a lawyer should always review account reconciliations, bank statements and underlying documents supporting transactions affecting the trust account, even if delegated to another person. In that way, the lawyer can be alerted to the financial misconduct of any employee or contractor and avoid the financial and ethical ramifications for the wrongful conduct of the nonlawyer employee or independent contractor.

There are numerous warning signs that may indicate such misconduct, and a lawyer should carefully monitor the trust account (and operating account) for possible problems. These possible danger signals would include but are not limited to the following:

- Blank or incomplete check stubs or deposit slips

- Missing checks

- Accounts that do not balance

- Checks returned for insufficient funds

9

- Unidentified counter withdrawals or electronic transfers

- Records of excessive voided checks

- Checks made payable to an unfamiliar vendor

- Excessive checks to a particular vendor

- Possessiveness, secretiveness, or defensiveness of the lawyer or employee responsible for bookkeeping

- Lack of monthly reconciliations of accounts

- Unopened bank statements or unopened bills

- Frequent trips to the bank

- Complaints from vendors or third parties that they are not being timely paid or that they did not receive a check that has been issued

- Past due law office bills such as phone or other utility bills

- Operating or personal account checks written to the trust account

- Monthly checks for the same amount (such as a car or mortgage payment

- Unusual urgency about resolving a case (settlement, closing, etc.)

- Signs of a lifestyle beyond the means of the lawyer or employee

- Signs of depression or alcohol or drug abuse

While there may be a logical explanation for each of these circumstances, many cases of misappropriation of large sums of client or firm funds could have been avoided if these warning signs had been heeded.

In addition to the problem of funds being diverted by a lawyer or employee for his or her own use, misappropriation may occur when trust

funds of one client are utilized for another client. It should be obvious but may bear noting that funds withdrawn for or on behalf of a client <u>must be withdrawn only against finds being held for that particular client.</u> If Client A has $1000 in trust and Client B has only $50, a check cannot be written to or on behalf of Client B for $100 (or even $50.01.)

In order to avoid the inadvertent invasion of one client's funds for a second client's benefit, another potential problem deserves mention. An attorney should take great care to be certain that funds are not distributed from the trust account against a check deposited in the trust account until the attorney is assured that the deposited check has cleared. With the exception of wire transferred funds and most certified checks[1], the fact that a check is deposited does not necessarily mean that the funds are immediately available for distribution. The maker of the check has the power to stop payment for a period of time, and checks drawn against an out-of-state account may take as long as ten (10) days to clear. For this reason, an attorney should <u>always</u> check with the bank handling the trust account to be sure the newly deposited funds are available prior to distributing them.

## V. Interest on Lawyer Trust Accounts (IOLTA)

Once was the time when attorney trust accounts were mostly non-interest-bearing. The reason for this was that any interest earned was not the property of the attorney, and the problem of how to allocate interest among numerous clients for whom the attorney might be holding small sums of money for varying periods of time was insurmountable.

In recognition of this problem as well as the fact that a great deal of money was being "lost" by the waiver of interest on attorney trust funds, in the 1980's the American Bar Association proposed the IOLTA program, which was quickly adopted by many states including New Mexico. Under this program, an attorney could elect to place client funds which were nominal or to be held only briefly in a pooled interest-bearing account at any bank authorized to do business in New Mexico. The interest earned (less any service charge) would be remitted at least quarterly to the NM State Bar Foundation to fund law-related public service activities.

---

[1] We say "most" certified checks, because a recent scam targeting attorneys has involved forged certified checks. Be sure you know your issuer.

11

In 2009, however, participation in the IOLTA program was made mandatory by the Supreme Court's adoption of Rule 24-109 of the Rules Governing the New Mexico Bar. Pursuant to this rule, all "IOLTA eligible funds" shall be deposited in an IOLTA account "unless the funds can earn income for the benefit of the client or third person in excess of the costs incurred to secure and distribute such income to the client or third person."

To learn the IOLTA status of a particular bank or to obtain a list of IOLTA-approved banks, you can contact the State Bar of New Mexico.

### VI. Trust Account Overdraft Notification

As of January 1, 2010, a new compliance rule known as Trust Account Overdraft Notification was adopted by the Supreme Court. This is Rule 17-204 B. Under this rule, a trust account must be clearly identified an as "Attorney Trust Account" or "IOLTA Account." This may seem to be an obvious designation, but in the past trust accounts bore such exotic names as "Client Funds," "Incidental Account," "Fee Account" and the like. Requiring the accounts to be named either "Attorney Trust Account" or "IOLTA Account" helps banks to determine whether the account is subject to overdraft notification.

Pursuant to this Rule, banks which are IOLTA approved most also agree to notify the Office of Disciplinary Counsel whenever a properly payable check or wire transfer is presented against a trust account containing insufficient funds, whether or not the instrument is honored. The purpose behind the rule is to help prevent misappropriation by providing an early warning of any improprieties in the handling of attorney trust accounts. Upon receipt of a bank notification of insufficient funds, the Office of Disciplinary Counsel will contact the attorney and request an explanation for the overdraft and any supporting documentation.

If the explanation is satisfactory, the overdraft notice will not be recorded as a complaint against the attorney, and the matter will be considered at an end. Examples of satisfactory explanations would include but not be limited to

- Documented bank error

- Documented math error

12

- Dishonored instrument deposited

If an explanation is not sufficient to show that the overdraft can be logically explained, however, the overdraft is treated as a complaint and further investigation – such as an audit of the account – may ensue.

Upon receipt of an overdraft notification concerning an attorney trust account, Disciplinary Counsel may, in addition to requiring a response to all other inquiries concerning the overdraft, require proof of compliance with all of the required records listed in 17-204(A).

## VII. Account Surpluses

In the best of all possible worlds, there would never be an excess (or a deficiency) of funds in one's trust account. Unfortunately, problems with excess funds occasionally occur. Clients may disappear before their share of a settlement or any unearned fees or overpayment of costs can be forwarded to them. Checks issued to clients or third parties may not be cashed so remain on the books for years.

If the problem is that the client has disappeared, one must exercise "due diligence" to ascertain the client's whereabouts. Whether "due diligence" involves writing to the client at his last know address, searching for him on the internet, running an advertisement in a local paper under "Legal Notices," or hiring a private investigator would hinge somewhat on the amount in question. A $5000 settlement or dividend would probably merit more attention than $2.53 in unexpended costs.

If the excess is because of someone's failure to negotiate a check issued on behalf of a client, one solution would be to stop payment on the check and issue a check in a like amount to the client explaining the problem and suggesting that the client contact the creditor directly about payment (with a copy of the letter to the creditor.) Prior to doing this, checking with the creditor to insure that the check was received would be appropriate.

If location of the person entitled to the funds cannot be ascertained, an attorney may <u>not</u> simply transfer the excess funds to the business or office account. Currently, the unclaimed amount will escheat to the State pursuant to the Uniform Unclaimed Property Act (NMSA §§ 7-8A-1 <u>et seq.</u>) The

13

length of time which must elapse varies from one (1) to fifteen (15) years, depending on the property. Consideration is being given, however, to an amendment to the Rule 17-204 which would provide that unclaimed surplus funds in an attorney trust account would be transferred to the Client Protection Fund.

### VIII. Third Party Claims

An attorney's fiduciary duty encompasses not only clients but also third parties who may have an interest in a client's funds. The third party is entitled to notice that the funds in which he or she has an interest have come into the attorney's possession, and the attorney is required to protect the third party's interest in those funds.

Problems in this area arise most frequently in the context of personal injury cases. There may be a subrogation claim by the client's own insurer. Additionally, it is almost routine for clients – with or without the attorney's approval – to assign a portion of any settlement received to a health care provider. (NOTE: the attorney may not make such an assignment or issue a "letter of protection" absent the client's consent, however.) In return, the provider will forego efforts to collect the amounts owed by the client until a judgment or settlement is obtained.

If the settlement is sufficient to cover all outstanding subrogation claims and assignments, and if the client and attorney agree that the amount of each claim against the settlement is justified and should be paid, things generally go fairly smoothly. It frequently occurs, however, that the judgment/settlement is insufficient to cover all claims and/or that the client believes the bill is excessive and/or that the client simply wants to keep more of the money for himself. The unwary attorney may seek to resolve this problem by simply giving the client all of the proceeds (less fees and costs) and telling the client to resolve the bills as he or she sees fit. THIS WILL INVARIABLY LEAD TO A DISCIPLINARY COMPLAINT BY THE THIRD PARTY CLAIMANT – and may well lead to the imposition of discipline.

Pursuant to Rule 16-115(D), the attorney is required to notify the third party that the funds in which he or she has a claimed interest have been received. If the settlement is insufficient or if the amount claimed is in dispute, the attorney may attempt to get the third party to compromise the

claim and accept a lesser amount. (In the event of an insufficient settlement, the request for compromise is generally met with more success if the attorney is compromising his or her fee as well.) If no resolution can be reached, the attorney may suggest arbitration or mediation between the parties or, in extreme case, file an interpleader action. Under no circumstances should the disputed funds be turned over to the client; the disputed funds **must** remain in trust, regardless of the client's wishes. An attorney may not assist the client in defeating a valid lien. *See* Matter of Rawson, 113 NM 758, 833 P.2d 235 (1992). Furthermore, if the attorney has issued the letter of protection with the client, the attorney may become personally liable for the amount of the debt in addition to violating the Rules of Professional Conduct. *See* Romero v. Earl, 111 NM 789, 810 P. 2d 235 (1992).

### IX. Trust Accounting Class

Effective 1/1/2017, all attorneys in private practice are required to attend a course in trust accounting at least once every three years. *See* Rule 17-204 NMRA.

15